US DISTRICT COURT
WESTERN DIST COURT
FILED ARKANSAS

APR 0 8 2016

DOUGLAS F. YOUNG, Clerk
By
Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS**

| | | |
|---|---|---|
| JASON MORRIS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 3:16 CV 3043 TLB |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| CITY OF EUREKA SPRINGS, | ) | |
| ARKANSAS; and | ) | |
| | ) | |
| | ) | |
| RANDY ATES, named in his | ) | |
| individual and official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

### INTRODUCTION

1.      The plaintiff, Jason Morris, is an individual who brings this action against the City of Eureka Springs ("City") and Chief Randy Ates, in his official and individual capacity (collectively, "defendants"), because of defendants' unlawful deprivation of plaintiff Morris' rights and privileges secured by both the United States Constitution and the Arkansas Constitution. Plaintiff Morris seeks a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 and compensation, damages, benefits, and other relief under 42 U.S.C. § 1983 and state law.

### JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1337, 28 U.S.C. § 1343, 42 U.S.C. § 1983, and 28 U.S.C. § 1367(a) (supplemental jurisdiction to entertain claims in Count II).

1

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## PARTIES

4.      Plaintiff Jason Morris is a resident of the United States, the State of Arkansas, and the city of Holiday Island, and is a "person" within the meaning of 42 U.S.C. § 1983.

5.      Defendant City of Eureka Springs is a city organized pursuant to the laws of the State of Arkansas. At all times material herein, defendant City was a "person" within the meaning of 42 U.S.C. § 1983.

6.      Defendant Chief Randy Ates is, and was at all times material herein, the Fire Chief of defendant City's Fire Department (hereinafter "ESFD" or "the Department") and its highest ranking official. Defendant Chief Ates is actively involved in the management, supervision, and control of the operations, activities, personnel, compensation, and employment policies and conditions of the Department. Defendant Chief Ates is named in both his individual and official capacity, and he is personally liable for the violations of 42 U.S.C. § 1983 and of the U.S. Constitution claimed herein. He is a "person" within the meaning of 42 U.S.C. § 1983.

## FACTUAL ALLEGATIONS

7.      Plaintiff Jason Morris was hired by defendants as a full-time fire fighter/paramedic on March 30, 2000, and worked in that capacity until his termination in October 2015.

8.      During his employment, plaintiff Morris was an exemplary employee who consistently received high performance ratings and never received any discipline. Morris was promoted to Captain in 2008.

2

9.    In September 2015, Arkansas Governor Asa Hutchinson appointed plaintiff Morris to the State Emergency Response Commission, which supervises the development and maintenance of local emergency plans.

10.    The International Association of Fire Fighters Local 4708 (hereinafter "the Association" or "Local 4708") is a labor organization that was organized in 2008 and represents paid fire fighters employed by the Department, and protects and promotes their rights.

11.    Plaintiff Morris was the first elected president of Local 4708, and continues to hold that position.

12.    Since its founding, Local 4708 has been involved in local political activities. For example, Local 4708 has offered support to the campaigns of a number of local officials, including two City Council members, by making campaign contributions and buying and putting up campaign signs around the City.

13.    Unlike the previous mayors, recently elected mayor Robert "Butch" Berry has refused all aid and support from Local 4708.

14.    The previous ESFD Fire Chief, Rhys Williams, had a good working relationship with Morris and with Local 4708. In November 2014, Fire Chief Williams left the Department and in March 2015, Mayor Berry appointed Defendant Chief Ates as Fire Chief.

15.    Chief Ates is not a current member of Local 4708. Although Chief Ates was originally a member of Local 4708, he never participated in any union events, including fundraising, never attended any union meetings, and has stated that the only reason he was member of the union was because everyone else was a member.

3

16. In the spring of 2015, almost immediately after he was appointed as Fire Chief, Chief Ates announced a number of new ESFD policies that were legally problematic and would have a direct impact on the safety and working conditions of all ESFD fire fighters as well as the safety of the community served by the ESFD.

17. For example, Chief Ates instituted a new overtime policy that would likely violate federal overtime laws and regulations and would make it difficult for the Department to maintain required staffing levels, as well as a new policy requiring fire fighters to purchase some of their own fire-fighting equipment, thereby endangering the on-duty safety of the City's emergency workers.

18. As President of Local 4708, plaintiff Morris attempted to speak with defendant Chief Ates about each of these new policies and their impact on the Fire Department and its ability to provide safe and consistent services to the community.

19. Defendant Chief Ates told plaintiff Morris that he did not care about any possible legal violations, repeatedly reminded plaintiff Morris that he did not care about Local 4708's concerns about the policies, and stated that the Association and its opinions were irrelevant.

20. Defendant Chief Ates has made further comments demonstrating his anti-union animus. For example, in May 2015, Assistant Chief Tom Dransfield left the ESFD. After learning that plaintiff Morris and other Association members discussed his resignation, defendant Chief Ates approached plaintiff Morris and told him that he and the Association needed to stay out of local politics.

21. Prior to his resignation, Assistant Fire Chief Tom Dransfield was in charge of maintaining the ESFD's Self-Contain Breathing Apparatus ("SCBA") equipment and air-

packs, keeping equipment records and sending out the air-packs for an annual inspection. After Assistant Chief Dransfield left the ESFD, Defendant Chief Ates never reassigned these responsibilities.

22.    At some point after Assistant Chief Dransfield left the Fire Department, the paperwork for the SCBA equipment and air-packs was moved to plaintiff Morris' file cabinet. Plaintiff Morris did not know that the records had been placed there and never received an assignment or order indicating that he had any responsibility with respect to the SCBA equipment and air-packs.

23.    In August 2015, City fire fighter and Local 4708 member Rod Wasson was injured while responding to a house fire because his SCBA equipment and air-pack malfunctioned. Wasson inhaled a significant amount of smoke and heat. The City commissioned an outside investigation into the cause of the SCBA equipment failure.

24.    Fire fighter Wasson worked with a local attorney to investigate and file a products liability suit. When Wasson's attorney called plaintiff Morris to discuss the progress of the investigation, defendant Chief Ates overheard the phone call. At the end of the conversation, defendant Chief Ates stated that Morris was not permitted to discuss the SCBA equipment failure.

25.    Plaintiff Morris advised defendant Chief Ates that, as the president of Local 4708, he had a duty to investigate any safety concerns affecting the members of the Association. Defendant Chief Ates then threatened plaintiff Morris by claiming that Morris should be careful because "[his] name is all over it." Because Morris had no role or responsibility with

5

respect to the SCBA equipment, he did not understand what Chief Ates meant by that comment.

26.    As part of that investigation, at the end of September 2015, Morris and another employee were searching for the SCBA records. Morris finally discovered the SCBA materials in the back of his file cabinet.  Morris immediately brought the records to defendant Chief Ates and informed him that he had been completely unaware that the SCBA paperwork was in the file cabinet.

27.    On October 2, 2015, defendant Chief Ates called a meeting with plaintiff Morris and three other individuals, including the Assistant Chief on the off-going shift and the Assistant Chief on the incoming shift. Chief Ates did not tell any of the meeting attendees the purpose of the meeting.

28.    During the October 2, 2015, meeting, defendant Chief Ates erroneously claimed that plaintiff Morris had been in charge of maintaining the SCBA equipment and air-packs since 2008. Defendant Chief Ates further claimed that because the air-packs had not been properly tested, he could bring criminal charges against Morris. Although there are no facts to support the allegation that Morris was in charge of the SCBA gear, Chief Ates then fired Morris.

29.    Since terminating Morris, defendants have attempted to manufacture support for their earlier unlawful actions. For example, defendant Chief Ates ordered fire fighter Marcos Coates to write a letter alleging that Morris teased Coates during work, even though Coates found Morris' comments neither bothersome nor offensive. Indeed, Coates's original letter stated that "[a]lthough the teasing was excessive, it did not bother me." Chief Ates ordered

6

Coates to remove that statement from the final version of the letter, and told Coates that no one would ever find out about the letter.

30.    Since Morris' termination, a number of Department employees and union members have expressed concern over supporting either Morris or Local 4708, for fear of retaliation and losing their jobs.

31.    Plaintiff Morris attempted to appeal his October 2, 2015, termination by sending a letter to Mayor Berry, the City of Eureka Springs, and City Attorney Tim Weaver. In the City's response, the City Attorney stated that because Arkansas is an at-will employment state, "there is [no] City grievance or review process open to the Fireman who was dismissed." As a result, plaintiff Morris has exhausted his administrative remedies.

## COUNT I

### UNLAWFUL RETALIATION IN VIOLATION OF
### THE FIRST AND FOURTHEENTH AMENDMENT RIGHT
### TO FREEDOM OF ASSOCIATION UNDER 42 U.S.C. § 1983

32.    Plaintiff Morris adopts and incorporates by reference paragraphs 1 through 31.

33.    Plaintiff Morris' right to freedom of association is protected by the First and Fourteenth Amendments to the U.S. Constitution pursuant to 42 U.S.C. § 1983.

34.    At all times material herein, Plaintiff Morris, as the President, joined, was a leader of, and actively participated in, Local 4708, a labor association comprised of fire fighters employed by the City of Eureka Springs and the Eureka Springs Fire Department. Morris routinely acted as a spokesperson for Local 4708 and its members on matters of public interest and concern, including safety.

35.     Upon recognizing that plaintiff Morris was a principal officer, leader, and member of Local 4708, and that he associated with other members of Local 4708, defendants engaged in actions, omissions, and decisions aimed at denying Morris the rights and privileges granted under law, including but not limited to harassment and termination. The actions, omissions, and decisions in harassing, retaliating against, and terminating Morris on the part of defendants, individually, severally, and/or jointly, were in retaliation for Morris' exercise of his Constitutional and lawful right to freely associate, in violation of the rights safeguarded under the First and Fourteenth Amendments to the U.S. Constitution. In addition, the actions, omissions, and decisions of defendants, individually, separately, and/or jointly, were designed to cause, and have caused, Morris to suffer humiliation and harm to his reputation, emotional and mental injuries, pain and suffering, and financial and other adverse consequences for which Morris seeks full damages and make-whole relief.

36.     Defendants' actions, omissions, and decisions were taken to discourage other fire fighters from joining and actively supporting the Association, and have deterred other employees of defendant City of Eureka Springs from exercising their Constitutional right to freely associate with Local 4708 and its members.

37.     Such actions, omissions, and decisions on the part of the defendants, including, but not limited to, plaintiff Morris' harassment and eventual termination, were taken under the color of law, and such actions, omissions, and decisions have deprived Morris of his rights, privileges and immunities secured by the U.S. Constitution and laws in violation of 42 U.S.C. § 1983. Liability and redress for such actions, omissions, and decisions exist under 42 U.S.C. § 1983.

8

38. Such actions and decisions on the part of the defendants were done in a knowing, willful, reckless, and bad faith matter, and violate clearly established constitutional and statutory provisions and rights of which a reasonable person would have known.

39. Defendants, individually, separately, and/or jointly, are fully liable to plaintiff Morris under 42 U.S.C. § 1983 based on their authority, actions, decisions and omissions. In addition, such unlawful actions, decisions and omissions were based on the policy-making and final decision making authority of the defendants, and were based on the policy, custom and practice of defendants.

40. The grounds and reasons offered by defendants for the adverse actions, omissions, and decisions taken against plaintiff Morris are false and pretextual.

## COUNT II

### UNLAWFUL RETALIATION IN VIOLATION OF THE FIRST AND FOURTHEENTH AMENDMENT RIGHT TO FREEDOM OF SPEECH UNDER 42 U.S.C. § 1983

41. Plaintiff Morris adopts and incorporates by reference paragraphs 1 through 40.

42. Plaintiff Morris' right to freedom of speech is protected by the First and Fourteenth Amendments to the U.S. Constitution pursuant to 42 U.S.C. § 1983.

43. At all times material herein, plaintiff Morris actively spoke out on matters of public concern, including, but not limited to, issues of public safety. The public has a vital interest in free and open discussion on issues of public importance.

44. Upon learning that plaintiff Morris had spoken out on such matters of public concern, defendants individually, separately, and/or jointly, engaged in actions, omissions and decisions aimed at denying Morris' employment rights and protections granted to him under

9

law, including, but not limited to, harassing, retaliating against, and terminating him from his employment as a fire fighter. These actions, omissions and decisions of the defendants, individually, separately and/or jointly, were designed to cause, have caused, and will continue to cause, Morris to lose wages, compensation, entitlements and rights. In addition, these actions, omissions and decisions of the defendants, individually, separately and/or jointly, were designed to cause, have caused, and will continue to cause, Morris to suffer humiliation and harm to his reputation, emotional and mental injuries, pain and suffering, financial and other adverse consequences, for which Morris seeks full damages and make whole relief.

45.    Such actions, omissions and decisions of defendants, individually, separately and/or jointly, were taken in response to, and in retaliation for, plaintiff Morris' exercise of his constitutional and lawful rights to speak out about matters of public concern, in violation of the rights safeguarded under the First and Fourteenth Amendments to the U.S. Constitution.

46.    Such actions, omissions and decisions on the part of defendants, individually, separately and/or jointly, including, but not limited to, harassing, retaliating against, and terminating Morris, were taken under the color of law, and such actions, omissions and decisions have deprived plaintiff Morris of his rights, privileges and immunities secured by the U.S. Constitution and laws in violation of 42 U.S.C. §1983. Liability and redress for such actions, omissions and decisions exist under 42 U.S.C. §1983.

47.    Defendants, individually, separately, and/or jointly, are fully liable to plaintiff Morris under 42 U.S.C. § 1983 based on their authority and actual decisions and omissions. In addition, such unlawful actions, decisions and omissions were based on the policy-making and final decision-making authority of the defendants, and were based on defendants' policy,

custom and practice.

48.    Defendants' actions, omissions, and decisions were done in a knowing, willful, reckless, and bad faith matter, and violate clearly established constitutional and statutory provisions and rights of which a reasonable person would have known.

49.    The grounds and reasons offered by defendants for the adverse actions, omissions, and decisions taken against plaintiff Morris are false and pretextual.

## COUNT III

### UNLAWFUL RETALIATION IN VIOLATION OF THE RIGHT TO FREEDOM OF ASSOCIATION UNDER ART. II, § 4 OF THE ARKANSAS CONSTITUTION

50.    Plaintiff Morris adopts and incorporates by reference paragraphs 1 through 49.

51.    The Constitution of the State of Arkansas provides that "[t]he right of the people peaceably to assemble, to consult for the common good; and to petition, by address or remonstrance, the government, or any department thereof, shall never be abridged." Ark. Const. Art. II, Sec. 4. This state constitutional protection extends to public employees, including fire fighters.

52.    Plaintiff Morris' right to freedom of association is protected by the Arkansas Constitution and is enforceable pursuant to the Arkansas Civil Rights Act ("ACRA"), which provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of this state or any of its political subdivisions subjects . . . any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Arkansas Constitution shall be liable to the party injured . . . for legal and equitable relief or other proper redress." Ark. Code Ann. § 12-123-105.

11

53.    At all times material herein, plaintiff Morris has been a leader and publicly active member of Local 4708, comprised of fire fighters employed by defendants. Morris regularly participated in the activities of the Association, and has acted as an officer of, and public spokesperson for, IAFF Local 4708.

54.    Defendants individually, separately, and/or jointly engaged in actions, omissions, and decisions aimed at denying the rights and protections granted under law to plaintiff Morris, including, but not limited to, harassment, retaliation, and termination from his employment as a fire fighter. These actions, omissions, and decisions of defendants, individually, separately, and/or jointly, were designed to cause, and have caused, Morris to suffer humiliation and harm to his reputation, emotional and mental injuries, pain and suffering, and financial and other adverse consequences for which Morris seeks full damages and make-whole relief.

55.    Such actions, omissions, and decisions of defendants were taken in response to, and in retaliation for, plaintiff Morris' exercise of his state constitutional and lawful right to freely associate, in violation of his rights guaranteed under Article II of the Arkansas Constitution and the ACRA.

56.    Such unlawful actions, omissions, and decisions of defendants, individually, separately, and/or jointly alleged herein, were done in a knowing, willful, reckless, and bad faith manner, and violate clearly established constitutional and statutory provisions and rights of which a reasonable person would have known.

57.    The grounds and reasons offered by defendants for the adverse actions, omissions, and decisions taken against plaintiff Morris are false and pretextual.

### COUNT IV

### UNLAWFUL RETALIATION IN VIOLATION OF
### THE RIGHT TO FREEDOM OF SPEECH UNDER
### ART. II, § 6 OF THE ARKANSAS CONSTITUTION

58.     Plaintiff Morris adopts and incorporates by reference paragraphs 1 through 57.

59.     The Constitution of the State of Arkansas provides that "[t]he free communication of thoughts and opinions, is one of the invaluable rights of man; and all persons may freely write and publish their sentiments on all subjects, being responsible for the abuse of such right." Ark. Const. Art. II, Sec. 6. This state constitutional protection extends to public employees, including fire fighters.

60.     Plaintiff Morris' right to freedom of speech is protected by the Arkansas Constitution and is enforceable pursuant to the Arkansas Civil Rights Act ("ACRA"), which provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of this state or any of its political subdivisions subjects . . . any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Arkansas Constitution shall be liable to the party injured . . . for legal and equitable relief or other proper redress." Ark. Code Ann. § 12-123-105.

61.     At all times material herein, plaintiff Morris actively spoke out on matters of public concern, including, but not limited to, matters of public safety. The public has a vital interest in free speech and open discussion on issues of public importance.

62.     Plaintiff Morris' right to speak out freely, on behalf of himself and others, on matters of public concern is protected by the Arkansas Constitution and is enforceable pursuant to the Arkansas Civil Rights Act.

63.     Upon learning that plaintiff Morris had spoken out on matters of public concern, defendants individually, separately, and/or jointly engaged in actions, omissions, and decisions aimed at denying the rights and protections granted under law to plaintiff Morris, including, but not limited to, harassment, retaliation, and termination from his employment as a fire fighter. These actions, omissions, and decisions of defendants, individually, separately, and/or jointly, were designed to cause, and have caused, Morris to suffer humiliation and harm to his reputation, emotional and mental injuries, pain and suffering, and financial and other adverse consequences for which Morris seeks full damages and make-whole relief.

64.     Such actions, omissions, and decisions of defendants were taken in response to, and in retaliation for, plaintiff Morris' exercise of his state constitutional and lawful right to free of speech, in violation of his rights guaranteed under Article II of the Arkansas Constitution and the ACRA.

65.     Such unlawful actions, omissions, and decisions of defendants, individually, separately, and/or jointly alleged herein, were done in a knowing, willful, reckless, and bad faith manner, and violate clearly established constitutional and statutory provisions and rights of which a reasonable person would have known.

66.     The grounds and reasons offered by defendants for the adverse actions, omissions, and decisions taken against plaintiff Morris are false and pretextual.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff Morris prays that this Court grant relief against each of the defendants, individually, separately, and/or jointly, as follows:

(a) Enter a declaratory judgment that defendants have willfully and wrongfully violated their statutory, constitutional, and legal obligations to plaintiff Morris and the public, and deprived plaintiff Morris of his rights, privileges, protections, compensation, and entitlements under law, as alleged herein;

(b) Enter a permanent injunction restraining defendants from continuing to deprive plaintiff Morris of his legal rights, and from continuing to interfere with and infringe upon his rights;

(c) Order defendants to rescind plaintiff Morris' termination and to immediately reinstate plaintiff Morris to the position of fire fighter, with rank and all job duties, seniority, compensation, benefits, and rights of employment he enjoyed prior to his termination;

(d) Order defendants to expunge and correct all files to eliminate any reference to Morris' termination, as well as the facts and circumstances surrounding his termination, including any false records related to the SCBA air-packs;

(e) Order a complete and accurate accounting of all the compensation, benefits, and relief to which plaintiff Morris is entitled;

(f) Award monetary damages to plaintiff Morris in the form of back pay, compensation, benefits, and other financial entitlements of employment, plus pre-judgment and post-judgment interest;

(g) Award compensatory damages against defendants, and punitive damages against the individual defendant, for the harm to plaintiff Morris' reputation, humiliation, emotional and mental suffering, and for other financial and consequential harm and injuries he has suffered;

15

(h) Award plaintiff Morris reasonable attorneys' fees and the costs and disbursements of

this action; and

(i) Grant other legal and equitable relief as may be just and proper.

## JURY TRIAL DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff Morris hereby

demands that his claims be tried before a jury.

Respectfully submitted,

Aaron Martin (AR: 2002086)
MARTIN LAW FIRM
2059 Green Acres
Fayetteville, AR 72702
Phone: (479) 442-2244
Fax: (479) 442-0134
E-mail: aaron@martinlawpartners.com

and

/s/ Sara L. Faulman
Sara L. Faulman (DC: 496679)
Sarah M. Block (NY: 5298815)
WOODLEY & McGILLIVARY LLP
1101 Vermont Ave., N.W., Suite 1000
Washington, DC  20005
Phone: (202) 833-8855
Fax: (202) 452-1090
E-mail: slf@wmlaborlaw.com
E-mail: smb@wmlaborlaw.com

*Counsel for Plaintiff*

16